IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

JEANE GROSS,

    *Plaintiff*,

    v.

ST. AGNES HEALTH CARE, INC.,
et al.,

    *Defendants*.

Civil Action No. ELH-12-2990

**MEMORANDUM OPINION**

    This case arises from the denial of life insurance benefits under an employee welfare benefit plan. Through her employer, plaintiff Jeane Gross continued to pay for a life insurance policy on her former husband, David Gross, from whom she was divorced. Following the death of Mr. Gross, plaintiff sought to recover the life insurance proceeds. Benefits were denied, however, because at the time of Mr. Gross's death, Ms. Gross was not married to Mr. Gross.

    Plaintiff subsequently filed suit against her employer, St. Agnes Health Care, Inc. ("St. Agnes"), and Ascension Health, the "Plan Administrator," defendants, asserting that benefits were wrongfully denied and that defendants misrepresented plaintiff's eligibility for life insurance benefits, despite her divorce.[1] In particular, she lodged claims for breach of contract

---

[1] Plaintiff initially filed suit in the Circuit Court for Baltimore County, Maryland, alleging claims against St. Agnes arising under State common law (Counts I through V). *See* Complaint (ECF 2). St. Agnes removed the case to this Court under 28 U.S.C. § 1441, asserting subject matter jurisdiction pursuant to 28 U.S.C. § 1331 on the basis of preemption under ERISA. *See* Notice of Removal (ECF 1) "[T]he fact that a state law is [conflict] preempted under § 514 does not provide a basis for removing the claim to federal court." *Peninsula Regional Med. Ctr. v. Mid Atlantic Med. Servs., LLC*, 327 F. Supp. 2d 572, 575 (D. Md. 2004) (citing *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370 (4th Cir. 2004)).

(Count I); fraudulent misrepresentation (Count II); negligent misrepresentation (Count III); promissory estoppel (Count IV); waiver (Count V); "Breach of Fiduciary Duties" under § 504 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104 (Count VI); and "Interference with Protected Rights" under §§ 510 & 511 of ERISA, 29 U.S.C. §§ 1140 & 1141 (Count VII). In addition to recovery of the benefits allegedly due under the policy, plaintiff seeks punitive damages and attorney's fees.

Defendants have moved to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion to Dismiss," ECF 22), and filed a supporting memorandum (ECF 22-1), along with numerous documents. *See* ECF 22-3; 22-4; 22-5; 22-6; 22-7. Plaintiff opposed the Motion ("Opposition," ECF 25), and defendants replied. ECF 27.

In addition, Ms. Gross has moved to file a Second Amended Complaint ("Motion to Amend," ECF 26), seeking to add ING Employee Benefits ReliaStar Life Insurance Company ("ING" or "ING ReliaStar"), the "Claims Administrator," as a defendant with respect to Counts I through VII, and to add two claims against defendants Ascension Health and ING ReliaStar: "Wrongful Denial of Benefit Rights Under ERISA 29 U.S.C. § 1104 for violation of 29 U.S.C. § 1132(a)(1)(B)" (Count VIII), and equitable estoppel (Count IX). *See* Second Amended Complaint ("S.A.C.," ECF 26-1). Defendants opposed the Motion to Amend, ECF 28, to which plaintiff replied. ECF 29.

---

On the other hand, "[w]hen [a] federal statute completely pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law," and may be removed to federal court. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003).

After removal, plaintiff filed an Amended Complaint (ECF 13), adding Ascension Health as a defendant, and adding two claims under ERISA (Counts VI and VII). Because this Court exercises federal question jurisdiction over plaintiff's ERISA claims, pursuant to 28 U.S.C. § 1331, I need not address whether complete preemption justified removal.

The motions have been fully briefed, and no hearing is necessary to decide them. *See* Local Rule 105.6. For the reasons that follow, I will grant the Motion to Dismiss, in part, and deny it, in part. I will also grant the Motion to Amend, in part, and deny it, in part.

## I. Factual Background

Plaintiff began her employment with St. Agnes in December 1999. Am. Compl. ¶ 8. On August 27, 2001, she enrolled in a "Supplemental Term Life Insurance Policy" (the "Policy") through St. Agnes for herself, her then-husband, David Gross, and their four children, for which she paid through payroll deductions. *Id.* ¶ 9.[2] Upon enrolling, plaintiff received a document titled "Supplemental Term Life Insurance Plan – Summary Plan Description" ("SPD"). According to plaintiff, it "was the only documentation ever provided . . . in regards to any explanation of benefits." *Id.* ¶ 10. In the Amended Complaint, plaintiff does not specify any of the terms of her Policy.

Defendants attached a copy of the SPD to their Motion to Dismiss. *See* Exhibit B, ECF 22-4.[3] It provided: "Through your Employer and the Ascension Health Supplemental Term Life Insurance Plan (the Plan), you can purchase additional life insurance coverage for yourself or for your Eligible Dependents . . . ." SPD at 2. The SPD's definition of "Eligible Dependent" included, *inter alia*, "eligible spouse." *Id.* at 3.[4] However, the SPD did not define "eligible spouse" and was "silent as to whether separation or divorce are grounds for termination of

---

[2] The parties have not specified the amount of the benefits under the Policy. However, in her "Wherefore" clause for Count I (Breach of Contract), plaintiff seeks to recover "the life insurance term policy limits of $100,000.00…." *See* Am. Compl. at 6.

[3] As discussed, *infra*, I may consider most of the exhibits attached to the Motion to Dismiss, because they are integral to plaintiff's claims and their authenticity is not disputed.

[4] As will be seen, the Policy defined a dependent to include a "lawful spouse."

benefits." Am. Compl. ¶ 14.

In Section 2, titled "Plan Benefits," the SPD provided a cursory summary of the available coverage. *See* SPD at 9-11. As to "Dependent Coverage," Section 2 stated, in part: "Since you are the beneficiary for your dependents' coverage, the benefit amount for the death of a covered dependent is payable to you." *Id.* at 9. It also said: "[I]f your dependent dies while covered under the Plan, you will receive the elected benefit amount. Payment will be made after the carrier receives proof of death." *Id.* However, the SPD advised that dependent coverage ends when "[a] dependent ceases to be eligible as a dependent." *Id.* at 5.

Notably, the SPD cautioned: "The information in this Summary Plan Description (SPD) is intended to serve as a summary of the Ascension Health Supplemental Term Life Insurance Plan." *Id.* at 2. Further, it advised: "If there are any discrepancies between the information in this SPD and the official Plan documents or certificates of insurance, the terms of the Plan documents and insurance certificates will prevail." *Id.*

Defendants appended a copy of the Plan to their Motion to Dismiss. *See* Exhibit A, ECF 22-3.[5] It stated that the Plan is an "employee welfare benefit plan subject to the Employee Retirement Income Security Act of 1974 ('ERISA')." Plan at 4. Section 5 of the SPD, titled "Your ERISA Rights," summarized the rights and protections available to Plan participants under ERISA. *See* SPD at 18-19. For example, it stated that Plan participants have the right to "[e]xamine" and "[o]btain, upon written request to the Plan administrator, copies of documents

_____

[5] The name of the Plan, as reflected on the first page of the exhibit, was formerly "Daughters of Charity National Health System, Inc. Life Insurance Plan." *See* Plan at 1. However, effective November 1, 1999, the Plan name was changed to Ascension Health Life Insurance Plan. *Id.* at 15; *see also* SPD at 20 (defining "Official Plan Name" as "Ascension Health Life Insurance Plan").

governing the operation of the Plan" and the right to "appeal any denial" of a claim for benefits. *Id.* at 18. The SPD also outlined the obligations imposed on "fiduciaries" under ERISA to "operate [the] Plan . . . prudently and in the interest of . . . Plan participants and beneficiaries." *Id.* And, the SPD advised: "If you have any questions about your Plan, you should contact your Employer." *Id.* at 19.

In addition, defendants attached to their Motion to Dismiss a copy of the Policy. *See* Exhibit D, ECF 22-6. It defined "Dependent" as, *inter alia*, "your lawful spouse." *Id.* at 29.

In January 2004, plaintiff and her then husband, David Gross, contemplated a divorce. Am. Compl. ¶¶ 11-12. According to plaintiff, they were both concerned about the security of their four children, *id.* ¶ 12, and based their decision "primarily . . . on whether Plaintiff would be entitled to the life insurance benefits if Mr. Gross's health deteriorated completely." *Id.* To determine "what rights and benefits she would be entitled [to] if divorced," plaintiff "referred to the SPD." *Id.* ¶ 13. Because it did not define "eligible spouse," *id.* ¶ 14, plaintiff met with the Benefits Coordinator for St. Agnes, Donna Lippo, to "inquire[] into how the separation and/or divorce would affect her potential benefits." *Id.* ¶¶ 15-16. Ms. Lippo was "fully aware of Plaintiff's circumstances" and "assured" plaintiff that she could maintain the life insurance coverage on her husband even if they were divorced. *Id.* ¶ 17.

Plaintiff "relied" on Ms. Lippo's representations, and she and Mr. Gross were divorced in September 2006. *Id.* ¶ 18. In November 2006, plaintiff submitted a "St. Agnes Healthcare Change Form" to "disenroll" Mr. Gross from medical, dental, and vision insurance, expressly indicating her divorce as the reason for the change. *Id.* ¶ 19. However, she did not "disenroll" him from the Policy. *Id.* Moreover, for about six years, Ms. Gross continued to pay

"contributions" for the life insurance coverage for her ex-husband, which were deducted from her paycheck on a bi-weekly basis. *Id.*

In August 2010, Mr. Gross was hospitalized due to an "ongoing illness." *Id.* ¶ 20. Fearing that Mr. Gross's death was "imminent," plaintiff met with Ms. Lippo, who provided plaintiff with information about how to file a claim for life insurance benefits. *Id.* ¶ 21. On or about September 3, 2010, Ms. Lippo informed plaintiff that, "following clarification from Defendant Ascension Health, Plaintiff would not be entitled to the life insurance benefits for her ex-husband." *Id.* ¶ 22. According to plaintiff, a "representative" of defendants "admitted that [Ms. Lippo] communicated the wrong information" to plaintiff regarding the supplemental life insurance policy. *Id.* ¶ 23.

As a result of Mr. Gross's death,[6] plaintiff filed a claim for life insurance benefits in late 2010 or early 2011. In a letter dated February 2, 2011, Kelly Brown, Senior Life Claims Examiner for ING, notified plaintiff that her claim for benefits had been denied. *Id.* ¶ 24. Defendants attached to the Motion to Dismiss, the letter to which plaintiff referred in her Amended Complaint. *See* Exhibit E, ECF 22-7. It stated, *inter alia*, *id.*:

> Dear Ms. Gross:
>
> We have received notice of the death of Mr. Gross. Please accept our sympathy for your loss.
>
> We have completed our review of the claim for the Dependent Spouse Life Insurance benefit under the above policy and have determined that no benefit is payable. In making our determination we reviewed the death claim form, the death certificate, enrollment form, and the group insurance policy.
>
> Under the terms of this policy, you may choose Dependent Spouse Life Insurance for your spouse. The policy definition of a dependent includes "your

---

[6] Plaintiff does not specify the date of Mr. Gross's death.

lawful spouse." The policy also states that your dependent's insurance stops on the date your dependent is no longer a dependent as defined.

The death certificate we received with this claim states that Mr. Gross was divorced at the time of his death. Because it does not appear that Mr. Gross was your lawful spouse at the time of his death, he was not an eligible dependent as defined in this policy. Therefore, there is no benefit payable and your claim for the Dependent Spouse Life Insurance benefit is denied.

You should present your divorce decree to your Human Resources department to arrange for a refund of all premiums that were paid by you after Mr. Gross was no longer an eligible dependent as defined by the policy.

The letter also informed Ms. Gross of her rights under ERISA to appeal the denial of her claim. *See id*. Then, in February 2011, plaintiff received a check for $1,716, which was "offered to help reimburse some of the payroll deductions toward her life insurance benefits." Am. Compl. ¶ 24.[7] Plaintiff "has not cashed" the check. *Id.*

## II. Standard of Review

St. Agnes and Ascension Health have moved to dismiss plaintiff's Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008); *see Aschroft v. Iqbal*, 556 U.S. 662, 684 (2009) ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ." (Citation omitted)); *see, e.g.*, *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (applying *Twombly* plausibility standard).

Whether a complaint adequately states a claim for relief is judged by reference to the pleading requirements of Fed. R. Civ. P. 8(a)(2). *See Twombly*, 550 U.S. at 554-55. Rule 8(a)(2) provides that a complaint must contain a "short and plain statement of the claim showing that the

---

[7] Plaintiff does not indicate who provided the check.

pleader is entitled to relief." Although a plaintiff need not include "detailed factual allegations," the rule demands more than bald and conclusory accusations or mere speculation. *Twombly*, 550 U.S. at 555; *see Painter's Mill Grille, LLC v. Brown*, 716 F.3d 342, 350 (4th Cir. 2013). To satisfy the minimal requirements of the rule, the complaint must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (brackets in original) (internal quotation marks omitted). A complaint that provides no more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," is insufficient. *Id.* at 555.

When deciding a motion to dismiss pursuant to Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint," and "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations omitted). However, the court is not required to accept legal conclusions drawn from the facts. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986); *Monroe v. City of Charlottesville, Va.*, 579 F.3d 380, 385-86 (4th Cir. 2009). And, if the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has not shown that "the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (citation omitted).

In resolving a motion under Rule 12(b)(6), a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). But, under Fed. R. Civ. P. 12(d), a district court has "complete discretion to determine whether or not to accept the submission of any

material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it." 5C CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1366, at 159 (3d ed. 2004, 2011 Supp.); *see Kensington Vol. Fire Dep't, Inc. v. Montgomery Cnty.*, 788 F. Supp. 2d 431, 436-37 (D. Md. 2011), *aff'd*, 684 F.3d 462 (4th Cir. 2012). Generally, if a court considers material outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," in which case "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

However, there are limited circumstances in which the court may consider extrinsic documents in the context of a motion to dismiss. For instance, the court may properly consider documents "attached to the complaint, as well those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (citations omitted); *see also Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004); *e.g.*, *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002) (stating that district court correctly considered ERISA plan agreement because plaintiff referred to and relied on the existence of "an agreement for medical-related services" between herself and defendants).

As indicated, in support of their Motion to Dismiss, defendants submitted various documents pertaining to the Policy, which were either referenced in the Amended Complaint or central to it. These documents include a copy of the Plan (ECF 22-3); a copy of the SPD (ECF 22-4); a copy of the Policy (ECF 22-6); and a copy of the letter denying plaintiffs' claim for benefits (ECF 22-7).

Plaintiff's claims are predicated on her alleged entitlement to benefits under the Policy and her rights under ERISA, and therefore the Plan, the Policy, and the SPD are all integral to the Amended Complaint.  Additionally, in her suit she expressly referred to the SPD and the letter denying her claim for benefits.  Nor does plaintiff dispute the authenticity of any of the documents submitted by defendants.  Therefore, I may consider most of them without converting the Motion to Dismiss to a summary judgment motion.  However, I will not consider the "Memorandum" notifying Plan participants of the selection of "ING" as the insurance company providing benefits under the Plan, which was submitted with defendants' Motion to Dismiss. *See* Exhibit C, ECF 22-5.  It was not mentioned in plaintiff's pleadings, does not form the basis of her claims, and consideration of it is not necessary to resolve the Motion to Dismiss.

Rule 15 of the Federal Rules of Civil Procedure governs amendments to pleadings.  Rule 15(a)(1), titled "Amendment as a Matter of Course," grants a party the right to "amend its pleading once as a matter of course within . . . 21 days after serving it, or . . . if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or a motion under Rule 12(b), (e) or (f), whichever is earlier."  Because plaintiff has previously filed an amended complaint, she must rely on Rule 15(a)(2), which states: "In all other cases, a party may amend its pleadings only with the opposing party's written consent or the court's leave."  *See Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  However, Rule 15(a)(2) also provides: "The court should freely give leave [to amend] when justice so requires."

Rule 15 is "a liberal rule" that enshrines "the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities."  *Laber*, 438 F.3d at 426; *see Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999).  Indeed, the Fourth Circuit has said

that "leave to amend a pleading should be denied 'only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would [be] futile.'" *Laber*, 438 F.3d at 426 (quoting *Johnson v. Oroweat Foods Co*, 785 F.2d 503, 509 (4th Cir. 1986)).

Defendants oppose the amendment on the grounds of futility. *See* ECF 28 at 2. An amendment is considered futile "when the proposed amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510. Of relevance here, an amendment is also futile if it would fail to withstand a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995). In evaluating plaintiff's Motion to Amend, I will apply the 12(b)(6) standard of review, discussed *supra*.

### III. Discussion

Defendants' arguments in support of the Motion to Dismiss are essentially two-fold. First, defendants contend that plaintiff's state law claims are preempted by ERISA. Second, as to plaintiff's claims under ERISA, defendants argue that plaintiff fails to state a claim. They offer the same arguments in opposing the Motion to Amend. Plaintiff's proposed Second Amended Complaint seeks to add ING as a defendant as to all claims and to include an additional claim, Count IX, for equitable estoppel, lodged against Ascension Health and ING. Accordingly, I will first discuss the state law claims for which defendants assert the defense of preemption, i.e., Counts I through V and IX. I will then discuss the claims lodged under ERISA, i.e., Counts VI through VIII, which defendants have opposed on the merits.[8] For convenience, I

---

[8] ERISA does not contain an explicit exhaustion provision, but an "ERISA claimant generally is required to exhaust the remedies provided by the employee benefit plan in which he participates as a prerequisite to an ERISA action for denial of benefits under 29 U.S.C. § 1132."

will address the counts as if they were lodged against all defendants (except as to Count IX, which is not lodged against St. Agnes), and Count IX as if it were included in the Amended Complaint.

A.  State Law Claims

Plaintiff's claims are all based on the same underlying factual premise: Defendants failed to provide life insurance benefits under the Policy in connection with the death of plaintiff's ex-husband, despite Ms. Lippo's representations that plaintiff's divorce would not affect her eligibility to recover the death benefit.  These allegations have spawned five state law claims: breach of contract, fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and waiver.  *See* Am. Compl. ¶¶ 25-70.  I agree with defendants that all of these claims are preempted under ERISA.

1.  *ERISA Preemption Generally*

ERISA was "enacted to protect the interests of participants in employee benefit plans and their beneficiaries…."  *Marks v. Watters*, 322 F.3d 316, 322 (4th Cir. 2003); *see* 29 U.S.C. § 1001(b).  It does so, *inter alia*, by setting "various uniform standards [for employee benefit

---

*Makar v. Health Care Corp of Mid-Atl. (Carefirst)*, 872 F.2d 80, 82 (4th Cir. 1989); *see Smith v. Sydnor*, 184 F.3d 356, 361 (4th Cir. 1999).  The exhaustion requirement is intended to "minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a non-adversarial dispute resolution process; and decrease the cost and time of claims settlement."  *Makar*, 872 F.2d at 83.  To my knowledge, the Fourth Circuit has not held that exhaustion in the context of ERISA is a jurisdictional requirement, but where an ERISA claimant fails to exhaust her administrative remedies, a court may dismiss the claim, without prejudice, to permit the claimant to pursue those remedies.  *See id.*; *see also Edwards v. Briggs & Stratton Retirement Plan*, 639 F.3d 355, 365 n.5 (7th Cir. 2011) ("We have never treated the requirement of exhaustion of administrative remedies in ERISA cases as being jurisdictional and instead . . . we consistently have held that the decision to require exhaustion in a given case is committed to a district court's discretion.").  Because defendants have not moved to dismiss for failure to exhaust, I have not addressed that issue.

plans], including rules concerning reporting, disclosure, and fiduciary responsibility." *Retail Industry Leaders Assoc. v. Fielder*, 475 F.3d 180, 190 (4th Cir. 2007) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 91 (1983)). In *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004), the Supreme Court said: "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions, which are intended to ensure that employee plan benefit regulation would be 'exclusively a federal concern.'" (Citations omitted). *See New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 646 (1995) (explaining that "[t]he basic thrust of the pre-emption clause was to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans"); *Pilot Life Ins. v. Dedeaux*, 481 U.S. 41, 46 (1987) (recognizing "the reservation to Federal authority [of] the sole power to regulate the field of employee benefit plans as ERISA's crowning achievement," and noting that the legislation's sponsors "emphasized both the breadth and importance of the preemption provision" to "establish pension plan regulation as exclusively a federal concern.") (internal quotation marks and citations omitted); *Singer v. Black & Decker Corp.*, 964 F.2d 1449, 1452–53 (4th Cir. 1992) ("The preemption of state laws relating to employee benefits guarantees that plans and plan sponsors are subject to only a single, federal set of requirements.").

Preemption under ERISA takes two forms: "Ordinary" or "conflict" preemption, and the jurisdictional doctrine of "complete" preemption. *See Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 370-71 (4th Cir. 2004). In *Sonoco*, the Fourth Circuit observed: "In the ERISA context, the doctrines of [ordinary] preemption and complete preemption are important, and they are often confused." *Id.* at 371.

Under the doctrine of ordinary or conflict preemption, "'state laws that conflict with federal laws are preempted, and preemption is asserted as "a federal defense to the plaintiff's suit."'" *Id.* at 370 (quoting *Darcangelo*, 292 F.3d at 186-87, in turn quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). "For ERISA preemption purposes, 'State law' includes both statutory and common law." *Custer v. Sweeney*, 89 F.3d 1156, 1166 (4th Cir. 1996) (citing 29 U.S.C. § 1144(c)(1)). Notably, a plaintiff is "barred" from pursuing a claim under state law that is subject to conflict preemption, even if a federal remedy is not available. *King v. Marriott Int'l Inc.*, 337 F.3d 421, 425 (4th Cir. 2003); *see Marks*, 322 F.3d at 323. Despite the severity of such a result, the doctrine recognizes that "it is entirely within the power of Congress to completely eliminate certain remedies by preempting state actions, while providing no substitute federal action." *King*, 337 F.3d at 425.

In the ERISA context, conflict preemption is rooted in § 514(a) of ERISA, codified at 29 U.S.C § 1144(a), which states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ."[9] (Emphasis added). In construing § 514(a), the phrase "relate to" is "'given its broad common-sense meaning, such that a state law 'relate[s] to' a benefit plan 'in the normal sense of the phrase, if it has a connection with or reference to such a plan.'" *Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 560 (4th Cir. 1994) (quoting *Pilot Life Ins. Co.*, 481 U.S. at 47); *see District of Columbia v. Greater Washington Bd. of Trade*, 506 U.S. 125, 129-30 (1992). Stated another way, "ERISA pre-empts any state law that refers to or has a connection with covered benefit plans. . . 'even if the law is not specifically designed to affect such plans, or the effect is only indirect.'" *Greater*

---

[9] Although not at issue here, ERISA exempts certain specified claims from preemption under § 514. *See Travelers*, 514 U.S. at 651; *Marks*, 322 F.3d at 323.

*Washington*, 506 U.S. at 129-30 (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 139 (1990)). Put simply, "preemption under § 514 precludes prosecution of the preempted state-law claim." *Marks*, 322 F.3d at 323.

In contrast, complete preemption is a jurisdictional doctrine. "When [a] federal statute *completely* pre-empts [a] state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law." *Darcangelo*, 292 F.3d at 187 (emphasis in original). So, "the doctrine of complete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" *Id.* (quoting *Taylor*, 481 U.S. at 65); *accord Pinney v. Nokia, Inc.*, 402 F.3d 430, 449 (4th Cir. 2005). This, in turn, endows a federal court with subject matter jurisdiction over claims lodged under state law. *See Darcangelo*, 292 F.3d at 187.

To determine whether a state law claim is completely preempted under ERISA, courts look to its "civil enforcement provision," ERISA § 502(a), codified at 29 U.S.C. § 1332(a), which "completely preempts state law claims that come within its scope and converts these state claims into federal claims under § 502." *Darcangelo*, 292 F.3d at 187; *see Taylor*, 481 U.S. at 65-66. Titled "Persons empowered to bring a civil action," § 502(a) provides, in relevant part, that "a participant or beneficiary" may sue "to recover benefits under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ." 29 U.S.C. § 1132(a)(1).

In *Sonoco Products*, 338 F.3d at 372, the Fourth Circuit outlined "three essential requirements for complete preemption," as follows:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce

via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan. (Citations omitted) (Alterations in original).

Notably, complete preemption does not provide for *dismissal* of a claim. In *Darcangelo*, 292 F.3d at 187, the Fourth Circuit explained: "[W]hen a claim under state law is completely preempted and is removed to federal court because it falls within the scope of § 502, the federal court should not dismiss the claim as preempted, but should treat it as a federal claim under § 502." In other words, a state law claim that is completely preempted should be evaluated as a claim under § 502 for purposes of a motion to dismiss. *See id.* at 195-96 (evaluating preempted breach of contract claim as a claim for breach of fiduciary duties under § 502).

There is some tension under ERISA between conflict preemption and complete preemption. Whereas conflict preemption mandates dismissal of a state law claim, complete preemption mandates that it be converted into a federal claim. In *Marks v. Watters*, *supra*, 322 F.3d at 322-23, the Fourth Circuit made clear that, even when a defendant asserts the defense of conflict preemption under § 514, dismissal of the claim is not proper if the claim is completely preempted. It said, *id*:

> . . . ERISA precludes the prosecution of preempted state-law claims that are not otherwise saved from preemption under § 514(b)(2)(A) unless they fall within the scope of the exclusive civil enforcement mechanism provided by § 502(a) of ERISA, 29 U.S.C. § 1132(a), *in which case they must be treated as federal causes of action under § 502(a)*. . . . Thus, if a state-law claim preempted by § 514 is not included within the scope of § 502(a), the claim is susceptible to a § 514 defense, whether it is brought in State or federal court. But if a state-law claim falls within the scope of § 502(a), it is "completely preempted" and therefore treated as a federal cause of action. (Emphasis added).

Thus, a court addressing preemption of a state law claim under ERISA should determine whether the claim is subject to conflict preemption under § 514, and therefore barred. The court

should also ascertain whether the claim is subject to complete preemption, in that it falls within "the exclusive civil enforcement mechanism of § 502," *Marks*, 322 F.3d at 323, and therefore should be converted to a federal claim. In other words, the mere fact that a state law claim is subject to conflict preemption does not mandate dismissal, as defendants' Motion to Dismiss seems to suggest.

Accordingly, I will apply the standard for conflict preemption under § 514 to determine whether plaintiff is barred from pursing her state law claims. Ordinarily, I would then consider whether to convert the claims to a § 502 claim under complete preemption, a possibility which defendants have not addressed. Nonetheless, in view of plaintiff's proposed Second Amended Complaint, it is not necessary to do so in this case. In particular, in Count VIII of the proposed Second Amended Complaint plaintiff has lodged a claim under ERISA § 502(a), which I address, *infra*.

2. *Preemption of Plaintiff's State Law Claims*

Defendants contend that plaintiff's state law claims (Counts I-V) are preempted by ERISA. Notably, in plaintiff's Opposition she did not address preemption under § 514 with respect to Ascension Health as to any of the common law claims (Counts I-V, IX). Moreover, she did not file a reply with respect to her Motion to Amend, and thus has not disputed the preemption of her State law claims against ING.

As noted, § 514 of ERISA states that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ." (Emphasis added). The parties do not dispute that the Plan qualifies as an "employee benefit plan" or that

- 17 -

plaintiff has lodged claims under "State law," as those terms are used in § 514. But, they dispute whether plaintiff's common law claims "relate to" the Plan.

With respect to Count I, plaintiff alleges in her Amended Complaint that, by enrolling in the Policy, she "entered into a contractual agreement" with defendants, and defendants orally "promised that they would provide Plaintiff with life insurance benefits for her ex-husband as described in the [Plan]." Am. Compl. ¶ 26. Plaintiff contends that, despite "making monthly contributions towards the policy for a period of nine years," and notwithstanding "reassurance[s] by Defendants that she would retain interest in the life insurance benefits" after her divorce, defendants "reneged and did not provide Plaintiff the benefits." *Id.* ¶¶ 26-27. She asserts: "By failing and refusing to provide the promised benefits," defendants "are in breach of their contract." *Id.* ¶ 29.

Section 514 of ERISA preempts "laws that provide alternative enforcement mechanisms to ERISA's civil enforcement provisions." *Darcangelo*, 292 F.3d at 190. Applying this rule, the Fourth Circuit held in *Darcangelo* that a breach of contract action to enforce the payment of benefits under an ERISA plan "is clearly preempted" under § 514. *Id.* at 194. This is because "an action to enforce the terms of a contract, when that contract is an ERISA plan, is of necessity an alternative enforcement mechanism for ERISA § 502 and is therefore 'relate[d] to' an ERISA plan and preempted by § 514." *Id.* at 195.

Counts II and III allege that defendants are liable for fraudulent and negligent misrepresentation, respectively. Again, these claims are predicated on Ms. Lippo's alleged representations to Ms. Gross that her divorce would not alter or affect Ms. Gross's eligibility for life insurance benefits upon the death of Mr. Gross. As to Count II, fraudulent

misrepresentation, plaintiff alleges that defendants "knowingly and recklessly" made false representations and "failed to disclose" material information concerning life insurance benefits to plaintiff. *See* Am. Compl. ¶¶ 32-34. According to plaintiff, she "reasonably relied upon the misrepresentations and concealment," because she continued to make payments on her policy premiums rather than seeking another policy. *Id.* ¶ 35. Ms. Gross claims that, as a result, she was "denied benefits." *Id.* ¶ 37. As to Count III, negligent misrepresentation, plaintiff avers that defendants failed to exercise due care and, as a result, her benefits were denied. *Id.* ¶¶ 41-46.

"Generally speaking, ERISA preempts state common law claims of fraudulent or negligent misrepresentation when the false representations concern the existence or extent of benefits under an employee benefit plan." *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 378 (4th Cir. 2001); *see, e.g.*, *id.* at 378-79 (holding that employee's claim of negligent misrepresentation against employer for misrepresenting employee's eligibility for tax-deferred pension benefits under an ERISA plan was preempted); *Hall v. Blue Cross/Blue Shield of Alabama*, 134 F.3d 1063, 1064-66 (11th Cir. 1998) (holding that ERISA preempted claim that fraudulent misrepresentations regarding the scope of coverage induced plaintiff to enroll in her employer-provided health benefits plan); *Farr II v. U.S. West Commc'ns, Inc.* 151 F.3d 908, 911 (9th Cir. 1998) (holding that plaintiff's fraud claim based on employer's failure to disclose the tax consequence of plaintiff's early retirement was preempted); *Shea v. Esensten*, 107 F.3d 625, 627-28 (8th Cir. 1997) (preemption applied to a state law claim for "fraudulent nondisclosure and misrepresentation about [the plan's] doctor incentive programs" that "limited [the participant's] ability to make an informed choice about his life-saving health care"); *Carlo v. Reed Rolled Thread Die Co.*, 49 F.3d 790, 791 (1st Cir. 1995) ("ERISA preempts a state law

claim of negligent misrepresentation against an employer based upon the employer's representations regarding the employee's prospective benefits under an early retirement program.").

Clearly, plaintiff's allegations arise out of Ms. Lippo's alleged misrepresentations concerning the "existence or extent of benefits." As a result, Counts II and III are preempted under § 514.

In her claim for promissory estoppel (Count IV), plaintiff alleges that defendants "promised" to provide plaintiff with benefits under the Policy, and therefore they are "estopped from denying Plaintiff's benefits entitled to her." Am. Compl. ¶¶ 49-52. The only representations alleged by plaintiff are the oral statements of Ms. Lippo, advising that plaintiff's divorce would not affect her benefit eligibility in the event of the death of her former spouse.

It is well established that "ERISA simply does not recognize the validity of oral or non-conforming written modifications to ERISA plans." *HealthSouth Rehabilitation Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1010 (4th Cir. 1996); *see also Degan v. Ford Motor Co.*, 869 F.2d 889, 895 (5th Cir. 1989) (explaining that using estoppel principles to bring about an oral modification of a written ERISA plan would conflict with ERISA's preference for written agreements). Indeed, ERISA mandates that an employee benefit plan be "established and maintained pursuant to a written instrument." 29 U.S.C. § 1102(a)(1). In view of this requirement, the Fourth Circuit has said that "oral and informal amendments to established ERISA plans are completely incapable of altering the specified terms of the plan's written coverage." *HealthSouth*, 101 F.3d at 1009. And, of relevance here, a promissory estoppel claim in which the plaintiff seeks to enforce an entitlement to benefits under an ERISA plan based on

an oral or informal modification "falls within ERISA's broad preemption provision." *Id.* at 1010. *Compare Kannapien v. Quaker Oats Co.*, 507 F.3d 629, 640 (7th Cir. 2007) (holding that employees' promissory estoppel claims were preempted because they "pursue[d] benefits to be paid from the ERISA Retirement Plan"), *with Pizlo v. Bethlehem Steel Corp.*, 884 F.2d 116, 120 (4th Cir. 1989) (holding that the plaintiffs' breach of contract and promissory estoppel claims were not preempted by ERISA because "[t]he claims [did] not bring into question whether Plaintiffs are eligible for plan benefits, but whether they were wrongfully terminated . . . ."). Accordingly, Count IV is also preempted.

As to Count V, Ms. Gross avers: "[T]he indication by Defendants' servants, agents and/or employees that Defendants would provide Plaintiff with the benefits as detailed in the Plan, constituted a waiver of Defendants' right to deny payment." *See* Am. Compl. ¶ 56. As with Counts I through IV, this State law claim "relates to" Ms. Gross's entitlement to benefits under the ERISA plan.

In *Holland v. Burlington Industries*, 772 F.2d 1140, 1147 (4th Cir. 1985), *cert. denied sub nom. Slack v. Burlington Indus., Inc.*, 477 U.S. 903 (1986), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989), the Fourth Circuit determined that waiver and estoppel claims under state law are preempted by ERISA, because they pose a risk of creating "conflicting employer obligations and variable standards of recovery." *See also White v. Provident Life & Accident Insurance Co.*, 114 F.3d 26, 29 (4th Cir. 1997) (holding that waiver claim predicated on insurer's mistaken acceptance of premiums was preempted by ERISA). "This is precisely the result that ERISA's broad preemption clause was enacted to avoid." *Id.*; *see also Gagliano*, 547 F.3d at 238-39 (holding that district court erred in applying doctrines of

waiver and estoppel to effect a change in the written terms of an ERISA plan). Therefore, Count V is preempted.

Count IX of the proposed Second Amended Complaint presents a claim for equitable estoppel against Ascension Health and ING, but not St. Agnes. *See* S.A.C. at 14 ("WHEREFORE" clause). Plaintiff avers that she "reasonably and detrimentally relied on" the defendants' misrepresentations in "divorcing her husband and consequently not receiving the benefits she is legally entitled to." *Id.* ¶ 80.

Count IX simply restates plaintiff's claim for promissory estoppel. As noted, estoppel claims predicated on the denial of benefits under an ERISA plan "relate to" the plan for purposes of § 514 and are thus preempted. *See e.g.*, *Salomon v. Transamerica Occidental Life Ins. Co.*, 801 F.2d 659, 660 (4th Cir. 1986) (holding state law breach of contract and estoppel claims are preempted by ERISA); *Holland*, 772 F.2d at 1147 (same). For these reasons, I will also deny the Motion to Amend to add Count IX, because the amendment would be futile.

Citing *LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1995), plaintiff attempts to distinguish the case law discussed above as to St. Agnes, arguing that St. Agnes is not a Plan "fiduciary," and therefore a claim against it does not "relate to" the Plan. *See* ECF 23 at 6. Plaintiff's characterization is squarely contradicted by Fourth Circuit precedent.

In *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir. 2007), the Court spoke plainly: "We have held that ERISA preempts state-law claims against nonfiduciaries if those claims relate to a plan." It explained: "The central question is not whether a particular defendant is a fiduciary, or whether the preemption decision would create a gap in the law with respect to suits against nonfiduciaries, 'but rather [ ] whether the action relates to

any employee benefit plan.'" *Id.* (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 419 (4th Cir. 1993). *LeBlanc* does not depart from this holding.

In *LeBlanc*, the Fourth Circuit addressed an issue that bears no semblance to the suit at issue here. It said, 153 F.3d at 147:

> The issue before this court is whether ERISA's express preemption clause precludes trustees of a pension plan subject to ERISA from suing a third party, who is neither a fiduciary nor a party in interest with respect to the pension plan, under state common law for damages allegedly flowing from the pension plan's reliance on allegedly fraudulent and misleading statements made by the third party in connection with an investment opportunity.

The Fourth Circuit held that such a common law fraud claim was not preempted, because it did "not undermine any of ERISA's objectives." *Id.* It reasoned that "the claim d[id] not mandate employee benefit structures or their administration, bind employers or plan administrators to particular choices or preclude uniform administrative practice, or provide alternate enforcement mechanisms for employees to obtain ERISA plan benefits." *Id.* at 148. It also explained: "Congress did not intend to preempt traditional state-based laws of general applicability that do not implicate relationships among the traditional ERISA plan entities including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *Id.*

Here, as discussed, plaintiff seeks to obtain ERISA plan benefits, and her claims constitute civil enforcement mechanisms alternative to § 502(a). Furthermore, plaintiff ignores that St. Agnes is her employer. Because plaintiff's claims against St. Agnes arise out of the relationship between St. Agnes, as her employer, and herself, as an employee, they clearly "implicate relationships among the traditional ERISA plan entities." *Id.* Contrary to plaintiff's assertion, preemption under ERISA is not reserved for claims against fiduciaries.

Undeterred, plaintiff also argues that her State law claims are not preempted by ERISA because her employer's conduct, "while touching on [the Plan], arises out of duties owed the participant by St. Agnes independent of the plan." ECF 25 at 8. In support of her argument, she relies on *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1171-72 (9th Cir. 2004). That case, too, is inapposite.

In *Providence Health*, an insurance plan sued a plan participant for breach of an agreement to reimburse the plan after the insured recovered tort damages from a third party. *See* 385 F.3d at 1171-72. The Ninth Circuit held that ERISA did not preempt the state law action, because the benefits had already been distributed, and Providence Health was simply attempting to enforce a promise made by the plan participant in relation to a judgment against a third party. *See id.* at 1171. It explained: "Providence is simply attempting, through contract law, to enforce the reimbursement provision. Adjudication of its claim does not require *interpreting the plan* or *dictate any sort of distribution of benefits*." *Id.* (emphasis added).

To be sure, *Providence* supports the proposition that not all relationships dealing with Plan provisions are subject to preemption. But, the case *sub judice* involves (1) the interpretation of the meaning of "eligible spouse" in the Plan and "lawful spouse" in the Policy and (2) the issue of whether Ms. Gross may obtain benefits under her plan. Thus, the very factors that counseled against preemption in *Providence Health* form the core of plaintiff's lawsuit.

I am readily satisfied that the claims alleged in Counts I through V and IX "relate to" an ERISA plan, and are therefore preempted under § 514. Accordingly, I will dismiss Counts I through V of the Amended Complaint and, on the grounds of futility, I will deny the Motion to

Amend to add Count IX. Similarly, with respect to the addition of ING as a defendant in Counts I through V, I will deny the Motion to Amend on the ground of futility.

B. ERISA Claims

In Counts VI through VII, plaintiff has lodged claims directly under ERISA. In the Amended Complaint, plaintiff lodged Counts VI and VII against St. Agnes and Ascension Health, which have moved to dismiss for failure to state a claim. In the proposed Second Amended Complaint, plaintiff seeks to add ING ReliaStar as a defendant in regard to those counts. Defendants oppose the amendment, claiming it would be futile. Additionally, in the Second Amended Complaint, plaintiff seeks to add Count VIII, Denial of Benefits, against Ascension Health and ING. Defendants contend that the proposed amendment fails to state a claim.

1. *Count VI: Breach of Fiduciary Duties*

In Count VI of the Amended Complaint, plaintiff lodged a claim against St. Agnes and Ascension Health for breach of fiduciary duty under § 520 of ERISA, 29 U.S.C. § 1104(a). *See* Am. Compl. ¶ 61. Because plaintiff seeks to add ING as a defendant in regard to Count VI, I will address this count as if it were initially lodged against all three defendants.

In particular, plaintiff avers that defendants "breached . . . their fiduciary duty to Plaintiff by not disclosing the fact that the Supplemental Term Life Insurance Plan, for which Plaintiff had been a participant, would not provide benefits that were duly owed to plaintiff and by continuing to withhold monthly contributions from Plaintiff['s] paycheck and misappropriating her funds." *Id.* ¶ 62.

With respect to the claim against St. Agnes, defendants maintain that it fails as a matter of law because St. Agnes is not a fiduciary, in that it has "'no power to make decisions as to plan policy, interpretations, practices or procedures.'" ECF 22-1 at 13 (citation omitted). Rather, they assert that St. Agnes is "simply Plaintiff's employer." *Id.* at 14; *see, e.g.*, *Ankney v. Metro. Life Ins.*, 438 F. Supp. 2d 566, 574 (D. Md. 2006) (finding that employer was not a fiduciary with respect to benefits under an ERISA plan, because all discretionary authority to decide claims had been delegated to insurer); *see also Moon v. BWX Techs., Inc.*, ___ F. Supp. 2d ____, 2013 WL 3462692, at *5 (W.D. Va. July 9, 2013) ("Because accepting payments and advising participants about their eligibility do not qualify as discretionary acts, Plaintiff's breach of fiduciary duty claim [against her employer] cannot stand.").

A fiduciary is defined in ERISA at 29 U.S.C. § 1002(21)(A) ("Definitions"). It states, in pertinent part: "[A] person is a fiduciary with respect to a plan to the extent . . . he exercises any discretionary authority or discretionary responsibility respecting management of such plan, . . . or [] he has any discretionary authority or discretionary responsibility in the administration of such plan." *Id.* In *Phelps v. C.T. Enterprises, Inc.*, 394 F.3d 213, 220 (4th Cir. 2005), the Fourth Circuit said:

> In determining whether a person is a fiduciary with respect to the particular activity at issue, a court is required to examine the relevant documents to determine whether the conduct at issue was within the formal allocation of responsibilities under the plan documents and, if not, ascertain whether, in fact, a party voluntarily assumed such responsibility for the conduct at issue.

*See also Coleman v. Nationwide Life Ins. Co.*, 969 F.3d 54, 61 (4th Cir. 1992) ("The discretionary authority or responsibility which is pivotal to the statutory definition of 'fiduciary' is allocated by the plan documents themselves.").

ERISA § 520, titled "Fiduciary duties," states, in pertinent part, 29 U.S.C. § 1104(a):

(a) Prudent man standard of care

    (1) . . . a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –

      (A) for the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries; and

        (ii) defraying reasonable expenses of administering the plan;

      (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character with like aims;

      (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

      (D) in accordance with the documents and instruments governing the plan . . . .

ERISA imposes upon a fiduciary "a duty to provide beneficiaries with accurate information." *Adams v. Brink's Co.*, 261 F. App'x 583, 595 (4th Cir. 2008) (unpublished); *see Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996). The three elements for a claim of breach of fiduciary duty based on misrepresentations are: "1) that a defendant was a fiduciary of the ERISA plan, 2) that a defendant breached its fiduciary responsibilities under the plan, and 3) that the participant is in need of injunctive or other appropriate equitable relief to remedy the violation or enforce the plan." *Adams*, 261 F. App'x. at 590.

In *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371 (4th Cir. 2001), the Fourth Circuit examined the nature of the duties imposed on plan fiduciaries under ERISA. It explained, *id.* at 380 (some internal citations omitted):

Congress intended ERISA's fiduciary responsibility provisions to codify the common law of trusts. Under common law trust principles, a fiduciary has an unyielding duty of loyalty to the beneficiary. Naturally, such a duty of loyalty precludes a fiduciary from making material misrepresentations to the beneficiary. However, a fiduciary's responsibility when communicating with the beneficiary encompasses more than merely a duty to refrain from intentionally misleading a beneficiary. ERISA administrators have a fiduciary obligation "not to misinform employees through material misrepresentations and incomplete, inconsistent or contradictory disclosures." *Harte v. Bethlehem Steel Corp*., 214 F.3d 446, 452 (3d Cir. 2000) (internal quotation marks omitted), *cert. denied*, 531 U.S. 1037 (2000).

Moreover, a fiduciary is at times obligated to affirmatively provide information to the beneficiary. Indeed, "[t]he duty to disclose material information is the core of a fiduciary's responsibility, animating the common law of trusts long before the enactment of ERISA." *Eddy v. Colonial Life Ins. Co. of America*, 919 F.2d 747, 750 (D.C. Cir. 1990). The common law of trusts identifies two instances where a trustee is under a "duty to inform." First, a fiduciary has "a duty to give beneficiaries upon request 'complete and accurate information as to the nature and amount of the trust property.'" *Faircloth v. Lundy Packing Co.*, 91 F.3d 648, 656 (4th Cir. 1996) (quoting Restatement (Second) of Trusts § 173 (1959)). Second, in limited circumstances, a trustee is required to provide information to the beneficiary even when there has been no specific request:

> "Ordinarily the trustee is not under a duty to the beneficiary to furnish information to him in the absence of a request for such information. . . . [However,] he is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which he knows the beneficiary does not know and which the beneficiary needs to know for his protection . . . ."

Restatement (Second) of Trusts § 173 cmt. d. In sum, the duty to inform "entails not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful." *Bixler* [*v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d [1292,] 1300 [(3d Cir. 1993)].

Notably, in the context of preemption, plaintiff argued that St. Agnes was not a fiduciary, and therefore her State law claims were not preempted as to St. Agnes. She takes the opposite view in regard to this claim, arguing that St. Agnes is a fiduciary. Yet, she has not addressed defendants' contention that, as to this ERISA claim, St. Agnes is an employer, not a

fiduciary. "By her failure to respond to [defendant's] argument" in a motion to dismiss, "the plaintiff abandons her claim."

Clearly, based on plaintiff's own allegations, St. Agnes is her employer, and did not serve in an administrative capacity as to the Plan or the Policy. Therefore, Count VI will be dismissed with respect to St. Agnes. *Ferdinand-Davenport v. Children's Guild*, 742 F. Supp. 2d 772, 777 (D. Md. 2010). In contrast, defendants concede that Ascension Health, as the "Plan Sponsor and Administrator," and ING ReliaStar, as the "Claims Representative," are fiduciaries of the Plan. *See* ECF 22-1 at 14-15. As to these two defendants, in the light most favorable to plaintiff, I am persuaded that she has stated a claim against them for breach of fiduciary duty.

"[A]n ERISA fiduciary that knows or should know that a beneficiary labors under a material misunderstanding of plan benefits that will inure to his detriment cannot remain silent— especially when that misunderstanding was fostered by the fiduciary's own material representations or omissions." *Griggs*, 237 F.3d at 381. For example, "'when an ineligible person contributes to a fund, a fiduciary has a duty to inform him of his ineligibility within a reasonable time after the [fiduciary] acquired knowledge of that ineligibility.'" *Id.* (quoting *Eddy v. Colonial Life Ins. Co. of Am.*, 919 F.2d 747, 751 (D.C. Cir. 1990)). In *Griggs*, the plaintiff sought advice from his employer[10] with respect to his eligibility for a tax-deferred lump sum distribution of early retirement benefits. 237 F.3d at 373. He alleged that his employer informed him that he was eligible for the tax-free distribution, but failed to correct that representation after learning that it was erroneous. *See id.* The Court held that, by failing to

---

[10] Unlike in this case, the employer in *Griggs* served as the administrator for the pension plan at issue, and therefore qualified as a fiduciary. *See* 237 F.3d at 374.

warn the plaintiff, the employer had breached its fiduciary obligations under ERISA.  *See id.* at 381; *see also Eddy*, 919 F.2d at 750.

Here, plaintiff has alleged that she was unsure of the status of her spousal life insurance benefits in the event that she and her husband were to obtain a divorce.  Therefore, she inquired of Ms. Lippo, who assured her that there would be no adverse consequences as to her eligibility for benefits under the Policy, despite a divorce.  Following the divorce, plaintiff removed her husband from her health insurance benefits, but continued to pay premiums for the life insurance Policy, in reliance on Lippo's representations.  In the light most favorable to plaintiff, she was misinformed by defendants regarding her eligibility for certain ERISA plan benefits, and defendants knew of plaintiff's mistaken beliefs.

Defendants argue that any misrepresentations concerning the Plan were not material because the plain language of the SPD and the Policy unambiguously indicated that the definition of "eligible dependent" does not include a former spouse.  *See* ECF 22-1 at 16-17.  This argument does not defeat plaintiff's claim for breach of fiduciary duty.

"Summary Plan Description" is a term of art under ERISA.  Every benefits plan governed by ERISA is required to provide a "summary plan description" to each beneficiary.  *See* 29 U.S.C. §§ 1021(a)(1), 1022(a). To be sure, a summary plan description is not the written instrument establishing the plan itself.  *See id.* § 1102(a)(1) (requiring that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument").  Rather, the summary plan description, as its name suggests, is a summary of certain plan provisions, which must "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and

beneficiaries of their rights and obligations under the plan." *Id.* § 1022(a). Among other things, a summary plan description must contain "the plan's requirements respecting eligibility for participation and benefits"; the "procedures to be followed in presenting claims for benefits under the plan"; and "the remedies available under the plan for the redress of claims which are denied." *Id.* § 1022(b).

The Supreme Court has said that summary plan documents "provide communication with beneficiaries about the plan, but . . . their statements do not themselves constitute the terms of the plan." *Cigna Corp. v. Amara*, ___ U.S. ____, 131 S. Ct. 1866, 1878 (2011). Thus, the SPD's explanation of plaintiff's benefits did not govern plaintiff's eligibility. But, plaintiff claims that she was not given a copy of the Policy itself. Therefore, the Policy could not have clarified plaintiff's misapprehension of her benefit eligibility. Moreover, plaintiff allegedly relied on oral representations from defendants that were intended to clarify her confusion.

Discovery may establish that plaintiff was timely provided with a copy of the Policy containing the pertinent language. If so, defendants' argument might have weight. In the meantime, I am persuaded that plaintiff has stated a claim for breach of fiduciary duty with respect to Ascension Health and ING ReliaStar because, in the light most favorable to plaintiff, she has alleged that these defendants fostered plaintiff's mistaken understanding and knew or should have known that plaintiff "was labor[ing] under a material misunderstanding of plan benefits," yet failed to correct that misunderstanding. *Griggs*, 237 F.3d at 381.

In allowing plaintiff to proceed with respect to her breach of fiduciary duty claim, I do not suggest that plaintiff is entitled to the award of the life insurance proceeds that she seeks. As noted, ERISA does not recognize oral modifications of Plan documents. And, as discussed,

*infra*, the plain language of the Policy provides benefits for the death of a spouse, not a former

spouse. But, at this juncture, the issue of damages is not before me.

Accordingly, I will dismiss Count VI of the Amended Complaint as to St. Agnes, but not

as to Ascension Health. Additionally, I will grant the Motion to Amend to add ING ReliaStar as

a defendant with respect to Count VI, because amendment would not be futile.

2. *Count VII: Interference With Protected Rights*

With respect to Count VII, defendants contend that plaintiff has failed to state a claim of

Interference with Protected Rights under ERISA §§ 510 & 511, 29 U.S.C. §§ 1140 & 1141.

Plaintiff has failed to respond to defendants' arguments with respect to Count VII, thereby

abandoning her claim. *See Ferdinand-Davenport*, 742 F. Supp. 2d at 777. In any event,

dismissal is appropriate.

Section 510 of ERISA, 29 U.S.C. § 1140, titled "Interference with Protected Rights,"

makes it unlawful, *inter alia*, "for any person to discharge, fine, suspend, expel, discipline, or

discriminate, against a participant or beneficiary for exercising any right to which he is entitled

under the provisions of an employee benefit plan . . . or for the purpose of interfering with the

attainment of any right to which such participant may become entitled under the plan . . . ."

"[T]he primary focus of § 510 [of ERISA] is to 'prevent[ ] unscrupulous employers from

discharging or harassing their employees . . . .'" *Conkwright v. Westinghouse Elec. Corp.*, 933

F.2d 231, 239 (4th Cir. 1991) (citation omitted). Accordingly, in applying § 510, courts require

that the employer engage in conduct affecting the employment relationship. *See Ingersoll-Rand*,

498 U.S. at 143 ("By its terms § 510 protects plan participants from termination motivated by an

employer's desire to prevent a pension from vesting."); *see also Stiltner v. Beretta U.S.A. Corp.*,

74 F.3d 1473, 1484 (4th Cir. 1996); *e.g.*, *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1503 (3rd Cir. 1994) (holding that § 510 is "limited to actions affecting the employer-employee relationship"), *cert. denied*, 513 U.S. 1149 (1995); *McGath v. Auto-Body N. Shore, Inc.*, 7 F.3d 665, 667-69 (7th Cir. 1993) (interpreting § 510 to encompass only discrimination in the employment relationship); *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1461 (10th Cir. 1991) (stating that an employer's acts must affect the employment situation to create a cognizable claim under § 510).

Clearly, plaintiff may not lodge Count VII against Ascension Health or ING, neither of which was her employer. Moreover, plaintiff has not alleged any facts suggesting, even remotely, that St. Agnes "discharge[d], fine[d], suspend[ed], expel[led], discipline[d], or discriminate[d] against" her because she sought to exercise her rights under ERISA, nor did it interfere with her exercise of those rights. Therefore, she fails to state a claim under § 510 of ERISA.

Additionally, plaintiff may not maintain an action under § 511 of ERISA, 29 U.S.C. § 1141. Titled "Coercive interference," it states, *id.*:

> It shall be unlawful for any person through the use of fraud, force, violence, or threat of the use of force or violence, to restrain, coerce, intimidate, or attempt to restrain, coerce, or intimidate any participant or beneficiary for the purpose of interfering with or preventing the exercise of any right to which he is or may become entitled . . . . Any person who willfully violates this section shall be fined $100,000 or imprisoned for not more than 10 years, or both.

It is well established that § 511 does not provide a private right of action. Rather, it provides "stiff *criminal* penalties for employers that take coercive action to prevent employees from obtaining benefits." *Becker v. Mack Trucks, Inc.*, 281 F.3d 372, 382 (3d Cir. 2002) (emphasis added); *accord West v. Butler*, 621 F.2d 240, 243 (6th Cir. 1980) ("Section 510

- 33 -

prohibits interference with protected rights; § 511 provides criminal penalties where that interference is coercive."); *Lojeck v. Thomas*, 716 F.2d 675, 680 n.11 (9th Cir. 1983) ("Section 510 of the Act prohibits interference with protected rights, and § 511 provides criminal penalties where that interference is coercive.") (Internal citations omitted).

Accordingly, I will dismiss Count VII of the Amended Complaint, and deny the Motion to Amend to add ING ReliaStar as a defendant with respect to this count.

3. *Count VIII: Denial of Benefits*

In Count VIII of the Second Amended Complaint, plaintiff seeks to lodge a claim for denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). As noted, this section provides a cause of action for a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id*.

Defendants oppose the amendment to add this claim, on the ground that "[n]o benefits are due to plaintiff under the terms of the plan." ECF 28 at 4. I agree.

In reviewing a plan participant's challenge to a denial of benefits under § 1132(a)(1)(B), "a *de novo* standard applies 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan,' in which case the exercise of assigned discretion is reviewed for abuse of discretion.'" *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 321 (4th Cir. 2008) (quoting *Firestone Tire*, 489 U.S. at 111, 115). Here, the Plan gives the "Plan Administrator," Ascension Health, "discretionary authority to interpret the Plan and resolve any ambiguity," including, but not limited to, "the eligibility of an Employee to become or remain a Participant . . . , and the rights

of Participants to reimbursement of medical expenses under the terms of the Plan." *See* Plan at 11. Additionally, the Plan states: "The Plan Administrator designates the Claims Representative," ING ReliaStar, "as its agent with respect to the duties and responsibilities of reviewing claims under the Plan." *Id.* at 8. Thus, it is apparent that Ascension Health and ING have discretion under the Plan with respect to eligibility decisions. *See Evans*, 514 F.3d at 321 (applying abuse of discretion standard of review because plan gave fiduciary "discretionary authority to determine eligibility for benefits" and "the power and discretion to determine all questions of fact . . . arising in connection with the administration, interpretation and application of the Plan").

Plaintiff's entitlement to benefits under the Policy "turn[s] on the interpretation of the terms in the plan at issue." *Firestone Tire*, 489 U.S. at 115; *see, e.g.*, *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 819-21 (4th Cir. 2013) (examining language of ERISA insurance policy provision to determine plan participant's eligibility); *Bureau of Nat'l Affairs v. Chase*, 889 F. Supp. 2d 739, 750-55 (D. Md. 2012) (examining "plain meaning" of ERISA plan documents in reviewing plan administrator's interpretation of health insurance policy). "'Courts construe ERISA plans, as they do other contracts, by 'looking to the terms of the plan' as well as to 'other manifestations of the parties' intent.'" *US Airways, Inc. v. McCutchen*, ___ U.S. ____, 133 S. Ct. 1537, 1549 (2013) (quoting *Firestone Tire*, 489 U.S. at 113).

Recently, the Fourth Circuit discussed the application of the principles of contract interpretation in the context of an ERISA plan. In *Johnson*, 716 F.3d at 819-20 (internal citations omitted), it said:

> A paramount principle of contract law requires us to enforce the terms of an ERISA insurance plan according to "the plan's plain language in its ordinary

sense," that is, according to the "literal and natural meaning" of the Plan's language. Courts should determine "the common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words." Our inquiry, then, requires us to consider "what a reasonable person in the position of the participant would have understood those terms to mean."

Moreover, "ERISA plans, like contracts, are to be construed as a whole." Courts must look at the ERISA plan as a whole and determine the provision's meaning in the context of the entire agreement. And, because contracts are construed as a whole, courts should seek to give effect to every provision in an ERISA plan, avoiding any interpretation that renders a particular provision superfluous or meaningless.

If application of these primary principles of construction fails to provide clarity and the plan language remains ambiguous, then we are "compelled to apply the rule of *contra proferentum* and construe the terms strictly in favor of the insured," and "in accordance with the reasonable expectations of the insured." "An ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." Whether an ambiguity in fact remains is ultimately a question of law for the court.

In my view, the terms of the Plan and the Policy unambiguously preclude plaintiff from recovering life insurance benefits for the death of her ex-husband. As noted, the Plan provided for benefits for an "eligible spouse," and the Policy stated that a "dependent" eligible for coverage includes "a lawful spouse." *See* Policy at 29. There is no ambiguity in this language. In context, the only common sense definition of the word "spouse" is a current husband or wife, not a former husband or wife. In other words, to recover spousal benefits, the employee had to be married to the dependent at the operative time.

If common sense and logic are not enough, I note that, to ascertain the plain meaning of contractual terms, courts often look to dictionaries. *See, e.g., Bock v. Computer Assocs. Int'l, Inc.*, 257 F.3d 700, 706-07 (7th Cir. 2001) (relying on dictionary definition to determine plain meaning of term in contract governed by ERISA); *Brown-Graves Co. v. Cent. States, S.E. & S.W. Areas Pens. Fd.*, 206 F.3d 680, 683-84 (6th Cir. 2000) (same). Black's Law Dictionary

(9th ed. 2009) defines spouse as "One's husband or wife by lawful marriage; a married person." *Id.* at 3553. *See, e.g.*, *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 455 (8th Cir. 1998) ("The Certificate of Insurance defines 'primary insured' to be 'you, the individual named on the certificate,' and defines 'insured person' to be 'you, and if covered, your spouse.' There is nothing ambiguous about this language, taken in its ordinary sense. *See* Webster's Third New International Dictionary 208 (1986) (defining 'spouse' as a 'man or woman joined in wedlock: married person: husband, wife'). Lachonne and Earl Bell were divorced December 8, 1994. . . . Earl Bell was not an 'insured person' under either policy since he was neither the individual named on the certificate nor the spouse of that person at the time of his death.").

Moreover, "an 'administrator's discretion never includes the authority to read out unambiguous provisions contained in an ERISA plan.'" *Chase*, 889 F. Supp. 2d at 748 (quoting *Blackshear v. Reliance Standard Life Ins. Co.*, 509 F.3d 634, 639 (4th Cir. 2007)). On the contrary, "to ignore the plain language of the plan 'constitutes an abuse of discretion.'" *Chase*, 889 F. Supp. 2d at 748 (quoting *Blackshear*, 509 F.3d at 639).

Plaintiff was divorced at the time of her former husband's death. Therefore, Mr. Gross was not a lawful or eligible spouse for whose death plaintiff was entitled to recover life insurance benefits under the Policy. Accordingly, plaintiff has failed to state a claim as to Count VIII. For the same reasons, her Motion to Amend as to Count VIII is futile.

## IV. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss is granted, in part, and denied, in part, as follows: Counts I through V and Count VII of the Amended Complaint are dismissed, with prejudice; and Count VI of the Amended Complaint is dismissed, with prejudice, as to St.

Agnes, but not as to Ascension Health.  Additionally, plaintiff's Motion to Amend is granted, in part, and denied, in part, as follows: With respect to the addition of ING ReliaStar as a defendant to Count VI, the motion is granted; with respect to the addition of ING ReliaStar as a defendant in regard to Counts I through V and VII, and the addition of Count IX, the motion is denied.

A separate Order follows.


Date: September 12, 2013

_____/s/_____
Ellen Lipton Hollander
United States District Judge